## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ALDEN MORGAN**                                              **CIVIL ACTION**

**versus**                                                           **NO. 05-6479**

**N. BURL CAIN, WARDEN,**                            **SECTION: "I" (3)**
**LOUISIANA STATE PENITENTIARY**

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).[1]  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1]  Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination.  According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Alden Morgan, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On February 1, 1999, he was found guilty of armed robbery in violation of La.Rev.Stat.Ann. § 14:64.[2]  On March 11, 1999, he was sentenced to a term of ninety-nine years imprisonment without benefit of parole, probation, or suspension of sentence.[3]  He filed a motion to reconsider sentence[4] which was denied after an evidentiary hearing on July 9, 1999.[5]  On February 21, 2001, the Louisiana Fourth Circuit Court of Appeal affirmed his conviction and sentence.[6]  He then filed with the Louisiana Supreme Court a related writ application which was denied on February 22, 2002.[7]

On September 20, 2002, petitioner filed with the state district court an application for post-conviction relief.[8]  That application was denied on May 18, 2004.[9]  He next filed with the

---

[2]  State Rec., Vol. III of III, transcript of February 1, 1999, p. 53; State Rec., Vol. III of III, minute entry dated February 1, 1999.

[3]  State Rec., Vol. III of III, transcript of March 11, 1999, p. 6; State Rec., Vol. III of III, minute entry dated March 11, 1999.

[4]  State Rec., Vol. III of III.

[5]  State Rec., Vol. III of III, transcript of July 9, 1999.

[6]  State v. Morgan, No. 2000-KA-0622 (La. App. 4th Cir. Feb. 21, 2001) (unpublished); State Rec., Vol. III of III.

[7]  State v. Morgan, 810 So.2d 1136 (La. 2002) (No. 2001-KO-1000); State Rec., Vol. III of III.

[8]  State Rec., Vol. II of III.  Included within the state court record is a receipt showing that petitioner's application was in fact given to prison officials for mailing on that date.  State Rec., Vol. II of III, "Inmate's Request for Legal/Indigent Mail" dated September 20, 2002.  When he received no ruling on that application, he filed an application for a writ of mandamus with the Louisiana Fourth Circuit Court of Appeal.  The court denied that application, noting that no post-conviction application was found in the district court record.  Petitioner was instructed to refile his application.  State v. Morgan, No. 2003-K-0729 (La. App. 4th Cir. May 21, 2003) (unpublished); State Rec., Vol.

Louisiana Fourth Circuit Court of Appeal an application for a supervisory writ of review[10] which was denied on July 27, 2004.[11]  He then filed with the Louisiana Supreme Court a related writ application[12] which was denied on June 3, 2005.[13]

On September 30, 2005, petitioner filed the instant federal application for *habeas corpus* relief.[14]  In support of his application, petitioner raises the following claims:

1. The trial court erred in failing to convene a sanity commission; and

2. Petitioner received ineffective assistance of counsel both at trial and on appeal.[15]

_____

II of III.  Petitioner refiled his post-conviction application on or about June 5, 2003.  However, in light of the prison mailing receipt, this Court finds that petitioner's application was "filed" as of September 20, 2002.  See Causey v. Cain, 450 F.3d 601 (5th Cir. 2006).

[9] State Rec., Vol. II of III, minute entry dated May 18, 2004.

[10] State Rec., Vol. I of III.

[11] State v. Morgan, No. 2004-K-1085 (La. App. 4th Cir. July 27, 2004) (unpublished); State Rec., Vol. I of I.

[12] State Rec., Vol. I of III.

[13] State ex rel. Morgan v. State, 903 So.2d 451 (La. 2005) (No. 2004-KH-2375); State Rec., Vol. I of III.

[14] Rec. Doc. 1.

[15] In his federal application, the ineffective assistance claims were presented as three separate claims.

On April 12, 2006, the state filed a response in which it was argued only that petitioner's application should be dismissed as untimely.[16]  On April 26, 2006, the undersigned ordered the state to file a supplemental response addressing the merits of petitioner's claims.[17]  That supplemental response was filed on June 5, 2007.[18]

<u>Timeliness</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his conviction becomes "final."   Under the AEDPA, a judgment is considered "final" upon the expiration of time for seeking direct review.  28 U.S.C. § 2244(d)(1)(A).[19]

As noted, on February 22, 2002, the Louisiana Supreme Court denied petitioner's writ application challenging the state intermediate appellate court's judgment affirming his conviction and sentence.  For AEDPA purposes, his conviction became "final" ninety (90) days later when his period expired for seeking a writ of certiorari from the United States Supreme Court.  <u>See</u> <u>Roberts v. Cockrell</u>, 319 F.3d 690, 694 (5th Cir. 2003); <u>Ott v. Johnson</u>, 192 F.3d 510, 513 (5th Cir. 1999); <u>Chester v. Cain</u>, Civ. Action No. 01-1958, 2001 WL 1231660, at *3-4 (E.D. La. Oct. 15, 2001); <u>see also</u> U.S. Sup. Ct. R. 13(1).  Accordingly, petitioner's period for seeking federal *habeas*

---

[16]  Rec. Doc. 6.

[17]  Rec. Doc. 7.

[18]  Rec. Doc. 29.

[19]  Although § 2244(d)(1) has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, those alternative provisions are inapplicable in the instant case.

- 4 -

*corpus* relief commenced on May 23, 2002, and expired one year later, unless that deadline was extended through tolling.

The AEDPA provides that the statute of limitations is tolled for the period of time during which a properly filed application for state post-conviction relief or other collateral review attacking a conviction or sentence is pending in state court.  28 U.S.C. § 2244(d)(2).  One hundred nineteen (119) days of petitioner's one-year statute of limitations elapsed prior to being tolled by the filing of his state post-conviction application on September 20, 2002.[20]  Although that application was denied, tolling continued uninterrupted until June 3, 2005, when the Louisiana Supreme Court denied the related writ application.  See Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-70 (5th Cir. 2004).[21]

When the statute of limitations again started to run at that point, a total of two hundred forty-six (246) days of the one-year period remained.  Petitioner's federal application was filed one hundred nineteen (119) days later on September 30, 2005,[22] and it was therefore timely filed.

---

[20]  See *supra* note 8.

[21]  Grillette holds that tolling continues uninterrupted during the period of appellate review, so long as petitioner sought such review in a timely manner.  From the state court record, there is no basis for finding that petitioner's related writ applications were untimely filed.

[22]  Petitioner signed the memorandum accompanying his federal *habeas corpus* application on September 30, 2005.  Rec. Doc. 1.  That date represents the earliest date that petitioner could have presented his application to prison officials for mailing and, therefore, the earliest date that this Court could deem his *habeas* petition to have been filed for statute of limitations purposes.  Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003).

Because the federal application was timely filed, and because the state concedes that petitioner exhausted his state court remedies,[23] the Court will address his claims.

Standard of Review

The AEDPA comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact.  Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2).  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).   The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

---

[23]  Rec. Doc. 6, p. 2.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1); Hill, 210 F.3d at 485.

<u>Facts</u>

On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts of this case as follows:

> Officer Jeffery Hochman testified that he investigated a robbery in the 1100 block of Second Street on August 9, 1998.  There he learned that an armed robbery and car jacking had occurred in which a red 1996 Volvo was taken and a shot was fired.  A cellular telephone was in the car, and the officer was able to trace the position of the car with the help of the cellular company.  Officer Hochman radioed a description of the car to officers in the Canal Street/Rampart Street area, and the Volvo was soon located.  A chase ensued in which the Volvo hit a tree, and the driver fled.  Officer Hochman went door to door in the neighborhood until he saw a blue bandanna in a driveway.  The victims had described the robber as wearing a blue bandanna over his face.  The officer spoke to the homeowner who nervously stated that he thought someone was on his property.  Alden Morgan was found in a shed.  After being given his <u>Miranda</u> rights, Morgan made a statement which the officer read for the jury.  In his statement, Morgan said he "went up and asked them people for some money."  He was carrying a "black gun with a brown handle" when he approached a couple with a baby.  The man threw his wallet to the ground while the woman got the baby out of the car.  When Morgan reached for the wallet, "the gun went off, pow!" and Morgan demanded the car keys which the man handed over.  Morgan then drove off and picked up his cousin; they drove around Elysian Fields Avenue, stopping to get something to eat at Anita's on Tulane Avenue.  However, the shifts were changing there, and Morgan decided to go to "the Iberville to get a bag of weed"; the police began chasing the car at that point.  After wrecking the car, Morgan and his

cousin tried to hide, but the police found them.  The defendant said he is addicted to heroin, "weed, rocks and powder."  Morgan said he dropped the gun when he was running from the police and that the man's wallet and the woman's purse were in a  trash can at a service station on Elysian Fields Avenue.

Sergeant Christy Williams, who assisted Officer Hochman, testified that the purse and wallet taken from the victims were recovered by a maintenance man at the service station on Elysian Fields Avenue.  The gun was recovered from an apartment in the St. Bernard housing project.

Officer Demetrius Jackson testified that he received a description of the stolen Volvo while he was on patrol, and about 5:15 a.m. when he saw the car, he tried to pull it over.  However, the car speeded up, and after a chase, the car crashed on Paris Avenue.  There were two people in the car, and the defendant was driving.  They fled when the car stopped.

Mr. Phillip Spengeman, the victim, testified that on August 9, 1998, he, his wife, and their three-year-old daughter had been visiting friends on First Street.  About 2 a.m. as they were strapping the child into her car seat, Mr. Spengeman noticed a man walking toward them.  He had a gun, and he instructed Spengeman to drop his keys and take the child out of the car.  Mr. Spengeman dropped his wallet also.  The couple and the child went back to the house and called the police.  Mrs. Spengeman's cell phone was in the car.  Later, Mr. Spengeman selected the defendant from a line-up and named him as the man who robbed him at gunpoint.

Mr. Andrew Harrelson, who attended the same dinner as Phillip Spengeman, testified that he was leaving just after the Spengemans, and he saw the robbery occur.  He heard Phillip Spengeman say something and then saw Spengeman drop his keys and wallet.  He saw a man wearing a mask and carrying a gun, and he heard a gunshot.  Mr. Harrelson ran into the house and called the police.  He was able to give a description of the robber's clothing to the police.

Mrs. Lois Spengeman testified to the same facts as her husband.  She described the robber as wearing a navy blue bandanna on the lower part of his face.  Mrs. Spengeman said her purse, cell

phone, some Tupperware dishes, and her sandals were in the car when it was taken.[24]

### Sanity Commission

Petitioner first claims that the trial court erred in failing to convene a sanity commission to determine his competency when adverse mental health information was presented in connection with his motion to reconsider sentence.  In the state post-conviction proceedings, the state courts rejected that claim.[25]

Petitioner did not offer an insanity defense at trial, and at no point did defense counsel ever argue that petitioner was incompetent to stand trial.  After conviction and sentencing, petitioner's counsel filed a motion to reconsider sentence, arguing that the sentence was excessive and that "[t]he Judge failed to consider mitigating circumstances."[26]  An evidentiary hearing was held on that motion on July 9, 1999.[27]  At that hearing, petitioner's mother and his probation officer testified regarding the purportedly mitigating circumstances, and it was urged that he be given a lenient sentence in light of his background.  His mother testified that petitioner was in special education classes in school, was "slow," quit school during or after the tenth grade, was raised in violent surroundings, had been beaten up, had a drug problem, and had been treated for drug

---

[24]   State v. Morgan, No. 2000-KA-0622, pp. 1-4 (La. App. 4th Cir. Feb. 21, 2001) (unpublished); State Rec., Vol. III of III.

[25]   State Rec., Vol. II of III, minute entry dated May 18, 2004; State v. Morgan, No. 2004-K-1085 (La. App. 4th Cir. July 27, 2004) (unpublished); State ex rel. Morgan v. State, 903 So.2d 451 (La. 2005) (No. 2004-KH-2375); State Rec., Vol. I of III.

[26]   State Rec., Vol. III of III, Motion to Reconsider Sentence.

[27]   A complete transcript of that hearing can be found in Vol. III of the state court record.

addiction.  Petitioner's probation officer testified that petitioner had a substance abuse problem, was in special education, was expelled after a fight at school, and was raised in a "dysfunctional environment."  She testified that she assumed petitioner was "mildly mentally retarded," although he had never actually been diagnosed as such.  She further stated that although he was never treated for mental illness, he was treated for substance abuse problems and at that time had "homicidal and suicidal ideations."  She testified that he had been diagnosed with a "[c]onduct disorder" and had been treated with Prozac for depression.

It is, of course, true that "[c]onstitutional due process requires that trial of an accused may be conducted only when he is legally competent." Lokos v. Capps, 625 F.2d 1258, 1261 (5th Cir. 1980).  However, a state may, as a matter of law, presume that a criminal defendant is competent to proceed and require the defendant to bear the burden of proving his incompetence. Medina v. California, 505 U.S. 437 (1992); Meredith v. Cain, Civ. Action No. 04-2126, 2005 WL 1400453, at *7 (E.D. La. June 2, 2005).  Louisiana does just that. State v. Hernandez, 735 So.2d 888, 893 (La. App. 5th Cir. 1999); State v. Lott, 671 So.2d 1182, 1186 (La. App. 2nd Cir. 1996).

In the instant case, it was never argued either before or during trial that petitioner was incompetent.  Moreover, even in connection with the motion for reconsideration of sentence, the argument was *not* that petitioner was *incompetent* but rather that his sentence should reflect due consideration of the purportedly mitigating circumstances in his case as set forth in the testimony of his mother and the probation officer at the post-trial evidentiary motion hearing.  Petitioner now argues that, based on that testimony, the trial judge should have concluded that petitioner might be incompetent and appointed a sanity commission *sua sponte*.

Petitioner's claim is utterly without merit.  As a matter of constitutional due process, a criminal defendant is considered legally competent when he has the "present ability to consult with his lawyer with a reasonable degree of rational understanding" and "has a rational as well as factual understanding of the proceedings against him."  Dusky v. United States, 362 U.S. 402 (1960); Dunn v. Johnson, 162 F.3d 302, 305 (5th Cir. 1998).[28]  The evidence to which petitioner points, i.e. the testimony that he was raised in a harsh and dysfunctional environment and had a learning disability, history of substance abuse and a conduct disorder, did not even begin to rise to the level necessary to give the trial court a basis for a reasonable doubt as to petitioner's capacity to proceed, much less to establish his legal incompetence.

Petitioner simply has not demonstrated that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, in light of the AEDPA's deferential standard, this Court likewise rejects the claim.

<u>Ineffective Assistance of Counsel</u>

Petitioner claims that both his trial and appellate counsel were ineffective.  In the state post-conviction proceedings, the state courts rejected those claims.[29]

---

[28]  Similarly, as a matter of state law, "[m]ental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense."  La.C.Cr.P. art. 641.

[29]  State Rec., Vol. II of III, minute entry dated May 18, 2004; State v. Morgan, No. 2004-K-1085 (La. App. 4th Cir. July 27, 2004) (unpublished); State ex rel. Morgan v. State, 903 So.2d 451 (La. 2005) (No. 2004-KH-2375); State Rec., Vol. I of III.

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. <u>See</u> <u>Strickland</u>, 466 U.S. at 697.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. <u>See</u> <u>Styron v. Johnson</u>, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." <u>Little v. Johnson</u>, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. <u>See</u> <u>Strickland</u>, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 371 (1993) (quoting <u>Strickland</u>, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. <u>See</u> <u>Crockett v. McCotter</u>, 796 F.2d 787, 791 (5th Cir. 1986); <u>Mattheson v. King</u>, 751 F.2d 1432, 1441 (5th Cir. 1985).

The appropriate standard for determining prejudice varies slightly depending on whether the petitioner is challenging the actions of trial or appellate counsel. In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." <u>Id</u>. In making a determination as to whether prejudice

occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."   Crockett, 796 F.2d at 793.  In order to prove prejudice with respect to a claim that appellate counsel was ineffective, a petitioner must show a reasonable probability that he would have prevailed on appeal but for his counsel's deficient representation. Briesno v. Cockrell, 274 F.3d 204, 207 (5th Cir. 2001); see also Smith v. Robbins, 528 U.S. 259, 286 (2000).  Therefore, petitioner must demonstrate a reasonable probability that, if appellate counsel's performance had not been deficient in the manner claimed, the appellate court would have vacated or reversed the trial court judgment based on the alleged error.  Briesno, 274 F.3d at 210.

Petitioner bears the burden of proof when asserting an ineffective assistance of counsel claim.  Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."  Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong.  Strickland, 466 U.S. at 697.

A claim of ineffective assistance of counsel is a mixed question of law and fact. Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Therefore, this Court must defer to the state court on such claims unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

Petitioner first argues that his trial counsel was ineffective in failing to investigate and pursue an insanity defense.  For petitioner to be entitled to relief on that claim, he must

demonstrate that there was a reasonable probability that an insanity defense would have had merit.

Savino v. Murray, 82 F.3d 593, 599 (4th Cir. 1996) ("[I]f there exists no reasonable probability that

a possible defense would have succeeded at trial, the alleged error of failing to disclose or pursue

it cannot be prejudicial."); see also Krist v. Foltz, 804 F.2d 944, 946 (6th Cir. 1986) ("An attorney

is not required to present a baseless defense or to create one that does not exist."); United States v.

Washington, Cr. A. 95-124-3 and Civ. A. 97-2371, 1997 WL 327459, at *2 (E.D. Pa. June 12, 1997)

(counsel is not ineffective in failing to raise a meritless defense, because the outcome of the

proceeding would not have been different if the defense had been raised).  In the instant case,

petitioner has not demonstrated that an insanity defense had a reasonable probability of success.

Moreover, for the following reasons, the Court notes that there is no reason to believe he could do

so.

   With respect to the insanity defense, Louisiana law provides:

> If the circumstances indicate that because of a mental disease
> or defect the offender was incapable of distinguishing between right
> and wrong with reference to the conduct in question, the offender
> shall be exempt from criminal responsibility.

La.Rev.Stat.Ann. § 14:14.

   Petitioner alleges that he has a history of mental problems.  However, even if that fact

had been established, which it has *not*,[30] a history of such problems, in and of itself, has no bearing

---

[30]  Petitioner's only "evidence" with respect to this claim is that his probation officer testified at the post-trial evidentiary motion hearing that petitioner had been hospitalized for a mental illness. However, that is not what she stated.  The officer testified that petitioner was hospitalized for substance abuse treatment and expressly stated that he had never been treated for mental illness. State Rec., Vol. III of III, transcript of July 9, 1999, p. 13.

on whether he would have had a viable insanity defense.  Under Louisiana law, "[c]riminal responsibility is not negated merely by the existence of a mental disease or defect ...."  State v. Williams, 346 So.2d 181, 186 (La. 1977).  A mental disease or disorder short of legal insanity is insufficient to support an insanity defense.  Id.; see also State v. Koon, 704 So.2d 756, 768 (La. 1997); State v. Weber, 364 So.2d 952, 956 (La. 1978).  Petitioner has made no allegations, much less brought forth evidence to show, that his mental problems were so severe as to render him incapable of distinguishing between right and wrong with respect to his criminal conduct.  The testimony of his mother and probation officer at the post-trial evidentiary motion hearing certainly fall far short of that mark.  That testimony reflected little more than that petitioner was raised in a violent and dysfunctional environment and suffered from a mild learning disability, substance abuse problems, and a conduct disorder.  Those traits are hardly uncommon among persons, such as petitioner, charged with violent crimes and clearly are insufficient to put counsel on notice of a potential basis for an insanity defense.

In light of the foregoing, the Court rejects petitioner's contention that counsel performed deficiently in failing to investigate a possible insanity defense based simply on the facts noted.  Moreover, even if counsel's performance could be considered deficient in that respect, petitioner has not established that there was a reasonable probability that an insanity defense would have succeeded at trial and, therefore, he has not demonstrated that he was prejudiced by counsel's failure to investigate and pursue such a defense.

Petitioner next argues that his trial counsel was ineffective in failing to request appointment of a sanity commission to determine whether petitioner was competent to stand trial.

That contention merits no further discussion.  For the reasons previously noted with respect to the claim that the trial court erred in failing to appoint a sanity commission *sua sponte*, the evidence does not even begin to rise to a level necessary to give counsel reason to question petitioner's capacity to proceed.  There is simply no basis for finding that counsel performed deficiently in failing to request the appointment of a sanity commission, and petitioner certainly has not met his burden to prove that he was prejudiced by counsel's failure to do so.

Petitioner also argues that counsel was ineffective in failing to challenge petitioner's confession.  The record reflects that counsel did file a motion to suppress the confession,[31] and that motion was denied after an evidentiary hearing.[32]  Even if it is assumed that counsel did not argue the specific grounds that petitioner now suggests, i.e. that he was "functionally illiterate" and did not understand his rights because was mentally retarded,[33] he has not met his burden of proof with respect to this claim.  There is no evidence in the record that petitioner was in fact illiterate or mentally retarded.[34]  Therefore, petitioner has not established either deficient performance or resulting prejudice with respect to this claim.

---

[31]  State Rec., Vol. III of III.

[32]  State Rec., Vol. III of III, minute entry dated December 14, 1998.

[33]  The motion hearing was not transcribed and so it is unclear precisely what counsel argued as the grounds for his motion.

[34]  Petitioner's probation officer testified that petitioner was making passing grades in his special education classes and that his "marks were good."  State Rec., Vol. III of III, transcript of July 9, 1999, p. 12.  She testified that although she assumed that petitioner was "mildly mentally retarded," he was never diagnosed as such.  State Rec., Vol. III of III, transcript of July 9, 1999, pp. 12-13.

Lastly, petitioner claims that his appellate counsel was also ineffective.  On appeal, counsel filed an Anders brief and a motion to withdraw.  Petitioner claims that counsel's brief failed to comply with the requirements of Anders v. California, 386 U.S. 738 (1967), and with the state requirements imposed by State v. Benjamin, 573 So.2d 528 (La. App 4th Cir. 1990), and State v. Jyles, 704 So.2d 241 (La. 1997).

In Anders, the United States Supreme Court held:

> [Counsel's] role as advocate requires that he support his client's appeal to the best of his ability.  Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw.  That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal.  A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court – not counsel – then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous.  If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires.  On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.

Anders, 386 U.S. at 744.

In Benjamin, the Louisiana Fourth Circuit Court of Appeal held:

> [T]his Court unanimously adopted Internal Rule 11, which now governs processing of "errors patent" cases.  This rule provides:
>
> > 1. A court-appointed appellate attorney may file a motion to withdraw if the attorney, after a conscientious and thorough review of the trial court record, determines that the appeal is wholly frivolous.  One copy of the motion, prepared for the signature of three judges, should be filed.

- 17 -

2.   The appellant's brief should accompany the motion to withdraw.  The brief shall comply with Rule 2-12, Uniform Rules, Courts of Appeal, and should include a thorough review of the procedural history of the case, a review of the facts of the case, a reference to anything in the record that might arguably support the appeal or a statement negating the presence of such, and a statement, either in the motion to withdraw or the appellant's brief, that counsel, after a conscientious and thorough review of the trial court record, can find no non-frivolous issues to raise on appeal and no ruling of the trial court which arguably supports the appeal.

3. Counsel shall attach to the appellant's brief proof that a copy of the motion and the brief were forwarded to the appellant, with a notation whether the appellant has/has not received a copy of the trial court record and/or trial transcript.  Counsel shall inform the appellant that he or she may file a supplemental brief in his or her own behalf.

4. After receiving the brief and motion, this Court shall notify the appellant that he or she should inform the court in writing within thirty days if he or she intends to file a brief.

5. If the Court finds, after an independent review of the record, that the appeal is wholly frivolous, it may grant the motion and affirm the conviction or trial court judgment.  If the Court finds any legal point arguable on the merits, it may either deny the motion and order the court-appointed attorney to file a brief arguing the legal point(s) identified by the Court, or grant the motion and appoint substitute appellate counsel.

Counsel is required to review the district court record thoroughly and present any claim with arguable merit to this court. However, this court will not require appointed counsel to raise frivolous issues, then refer to legal authorities which demonstrate that

- 18 -

these issues are in fact frivolous and thus undermine his client's position.  Indigent defendants have the right to be assisted by an appellate attorney exercising professional competence and judgment. We are convinced that indigent appellants receive such assistance when an attorney, exercising professional competence and judgment after a conscientious and thorough review of the record, concludes that there are no non-frivolous issues to raise on appeal and no rulings which arguably support the appeal.  This is the same exercise in judgment made by an appointed or retained appellate attorney who finds one arguable issue but no other non-frivolous issues to raise on appeal.  Counsel should, and must, raise whatever issues "arguably support the appeal", including arguments for change in established law when a valid basis for advocating such change exists.  However, counsel need not raise issues believed to be without merit and not even arguably supportive of the appeal.

When appointed counsel has filed a brief indicating that no non-frivolous issues and no ruling arguably supporting an appeal were found after a conscientious review of the record, Anders requires that counsel move to withdraw.  This motion will not be acted on until this court performs a thorough independent review of the record after providing the appellant an opportunity to file a brief in his or her own behalf.  This court's review of the record will consist of (1) a review of the bill of information or indictment to insure the defendant was properly charged; (2) a review of all minute entries to insure the defendant was present at all crucial stages of the proceedings, the jury composition and verdict were correct and the sentence is legal; (3) a review of all pleadings in the record; (4) a review of the jury sheets; and (5) a review of all transcripts to determine if any ruling provides an arguable basis for appeal.  Under C.Cr.P. art. 914.1(D) this Court will order that the appeal record be supplemented with pleadings, minute entries and transcripts when the record filed in this Court is not sufficient to perform this review.

Benjamin, 573 So.2d at 530-31.

In Jyles, the Louisiana Supreme Court then held:

In State v. Mouton, 95-0981, p. 2 (La. 4/28/95), 653 So.2d 1176, 1177, this Court sanctioned the procedures outlined in State v. Benjamin, 573 So.2d 528 (La. App. 4th Cir. 1990), for use by the appellate courts of Louisiana because the brief filed on behalf of the indigent defendant by appointed counsel provided "a detailed

discussion of various aspects of the case, including sufficiency of the evidence, the lack of objection to any of the testimony presented at trial, and the adequacy of the trial court's compliance with Louisiana's Sentencing Guidelines."  We were therefore satisfied in Mouton that the defendant had had "'the benefit of what wealthy defendants [contemplating an appeal] are able to acquire by purchase – a diligent and thorough review of the record and an identification of any arguable issues revealed by that review....'"  Id. (quoting McCoy v. Court of Appeals of Wisconsin, 486 U.S. 429, 439, 108 S.Ct. 1895, 1902, 100 L.Ed.2d 440 (1988)).

In this case, although the procedural statement of the proceedings below and the summary of the evidence presented at trial indicate that counsel read through the record, his conclusory request that the court of appeal "review the record for errors patent," in connection with another conclusory statement that "counsel, after a conscientious and thorough review of the trial record, can find no non-frivolous issues to raise on appeal and no ruling of the trial court which arguably supports the appeal" does not provide the same assurance.  An Anders brief need not catalog tediously every meritless objection made at trial or by way of pre-trial motions with a labored explanation of why the objections all lack merit.  See Jones v. Barnes, 463 U.S. 745, 752-53, 103 S.Ct. 3308, 3313-14, 77 L.Ed.2d 987 (1983) ("There can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review.... [I]mpos[ing] on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy that underlies Anders").  Nevertheless, "[u]nlike the typical advocate's brief in a criminal appeal, which has as its sole purpose the persuasion of the court to grant relief," the Anders brief must "assure the court that the indigent defendant's constitutional rights have not been violated."  McCoy, 486 U.S. at 442, 108 S.Ct. at 1903.  Counsel must demonstrate to the appellate court by full discussion and analysis that he has cast an advocate's eye over the trial record and considered whether any ruling made by the trial court, subject to the contemporaneous objection rule, had a significant, adverse impact on shaping the evidence presented to the jury for its consideration. See United States v. Pippen, 115 F.3d 422, 426 (7th Cir. 1997) (a brief which offers "no hint of a discussion of arguments that might be raised and why counsel believes them to be frivolous" does not comply with Anders and its progeny); United States v. Urena, 23 F.3d 707, 708-09 (2nd Cir. 1994) ("A naked

statement that no non-frivolous issues exist, without analysis or a discussion of the record, is inadequate to fulfill counsel's obligations under <u>Anders</u>"). Independent review of the record by the appellate court, or the opportunity of the defendant to file his own brief, while providing important and necessary safeguards, cannot substitute for the essential equal protection requirement that appointed counsel representing an indigent defendant "act in the role of an active advocate in behalf of his client, as opposed to that of *amicus curiae*." <u>Anders v. California</u>, 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967).

Accordingly, while we confirm our general endorsement of <u>Benjamin</u>, we emphasize that the brief filed by counsel must review not only the procedural history of the case and the evidence presented at trial but must also provide, as did the advocate's brief in <u>Mouton</u>, "a detailed and reviewable assessment for both the defendant and the appellate court of whether the appeal is worth pursuing in the first place." <u>Id</u>., 653 So.2d at 1177.

<u>Jyles</u>, 704 So.2d at 241-42.

In the instant case, the Louisiana Fourth Circuit Court of Appeal expressly found that petitioner's appellate counsel complied with all such requirements:

Counsel filed a brief requesting a review for errors patent. Counsel complied with the procedures outlined by <u>Anders v. California</u>, 386 U.S. 738, 87 S.Ct. 1396 (1967), as interpreted by this Court in <u>State v. Benjamin</u>, 573 So.2d 528 (La. App. 4th Cir. 1990). Counsel filed a brief complying with <u>State v. Jyles</u>, 96-2669 (La. 12/12/97), 704 So.2d 241. Counsel's detailed review of the procedural history of the case and the facts of the case indicate a thorough review of the record. Counsel moved to withdraw because she believes, after a conscientious review of the record, that there is no non-frivolous issue for appeal. Counsel reviewed available transcripts and found no trial court ruling which arguably supports the appeal. A copy of the brief was forwarded to the defendant, and this Court informed him that he had the right to file a brief in his own behalf. He has not done so.

As per <u>State v. Benjamin</u>, this Court performed an independent, thorough review of the pleadings, minute entries, bill of information, and transcripts in the appeal record. Defendant was properly charged by bill of information with a violation of La. R.S.

14:64, and the bill was signed by an assistant district attorney. Defendant was present and represented by counsel at arraignment, motion hearings, jury selection, trial, and sentencing.  A review of the trial transcript reveals that the State proved the offense beyond a reasonable doubt.  The sentence is legal in all respects.[35]

This Court has reviewed appellate counsel's brief[36] and has reached the same conclusion.

Petitioner has not demonstrated that the state court's decision rejecting his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, in light of the AEDPA's deferential standard, this Court likewise rejects those claims.

## <u>RECOMMENDATION</u>

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Alden Morgan be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from

---

[35] <u>State v. Morgan</u>, No. 2000-KA-0622, at p. 4 (La. App. 4th Cir. Feb. 21, 2001) (footnote omitted) (unpublished); State Rec., Vol. III of III.  The Louisiana Supreme Court rejected petitioner's related writ application without assigning reasons.  <u>State v. Morgan</u>, 810 So.2d 1136 (La. 2002) (No. 2001-KO-1000); State Rec., Vol. III of III.

[36] State Rec., Vol. III of III.

a failure to object.  <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this twenty-fourth day of September, 2007.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**